### Hercules Chemical Co. *v.* Orlowitz, Appellant.

*Contracts—Written contracts—Material alterations.*

It is a material alteration to a contract, which will render it inadmissible as evidence, to erase therefrom a list of goods written in the order in lead pencil, and substitute, therefor, a list written in ink, after the contract has been signed by the parties.

Where it clearly appears, upon the face of a writing that it has been altered in a material part, it is incumbent on the party producing it to account for the alteration, and until this is done, it is inadmissible in evidence.

Where a contract was signed setting forth the terms and conditions under which the goods were received, and the list of materials was written in pencil which was afterwards erased and written in ink, the written agreement was inadmissible, and oral evidence as to the terms and conditions of the contract should be allowed.

Argued October 11, 1918.    Appeal, No. 80, Oct. T., 1918, by defendant, from judgment of Municipal Court of Philadelphia, May T., 1917, No. 308, in favor of plaintiff in case tried by the court without a jury in suit of Hercules Chemical Company v. Maurice Orlowitz, trading as Kensington Supply Co.    Before ORLADY, P. J., PORTER, HENDERSON, TREXLER and WILLIAMS, JJ.    Reversed.

Assumpsit on a book account.    Before CASSIDY, J., without a jury.

The facts appear in the opinion of the Superior Court.

The court found in favor of the plaintiff for $198 and entered judgment thereon. Defendant appealed.

*Error assigned,* among others, was the judgment of the court.

*David S. Malis,* for appellant.—The alterations to the contract were material and rendered it inadmissible: Cornog v. Wilson, 231 Pa. 281; Sober v. Mooney, 48 Pa. Superior Ct. 92; Colonial Trust Company v. Getz, 28 Pa. Superior Ct. 619; American Barrow Company v. Swoop, 18 Pa. Superior Ct. 455.

*Alfred T. Steinmetz,* and with him *George Wentworth Carr,* for appellee.

OPINION BY PORTER, J., July 17, 1919:

The plaintiff's statement of claim averred an indebtedness upon a book account, for goods sold and delivered, and did not allege or refer to any written agreement. The defendant's answer admitted having received the goods, but alleged that they were merely placed with the defendant as a trial order, and that he had contracted with the agent of the plaintiff that he should have the right to return the goods within two months, if in his opinion he was unable to use so large a quantity, and that the plaintiff's agent had contracted to obtain orders for the goods from the retail trade and turn them over to the defendant to be filled, from the goods so delivered; that the agent for the plaintiff did take orders from various people and sent them to the defendant for delivery, but that the said agent in taking said orders contracted with said customers that they could return the goods if they were for any reason dissatisfied and the money therefor would be refunded by the defendant; that numerous customers did so return the goods and defendant was compelled to refund the money therefor; that de-

fendant made an earnest effort to dispose of the goods but was unable to do so and did return the balance of the goods, which were received and accepted by the plaintiff, and that he had, prior to the institution of this action, tendered to the plaintiff the amount due for the goods which were not so returned. With the pleadings in this condition the parties went to trial.

The plaintiff offered in evidence a copy of the book account attached to its statement of claim, which was not objected to, and rested. The defendant was then called as a witness and after some preliminary questions was asked by his counsel to tell just what had occurred between him and the agent of the plaintiff at the time of the alleged purchase. Counsel for plaintiff objected to the question, "unless we first get some information as to whether the negotiations between the parties culminated in something in writing." There had been in the pleadings no suggestion of a written agreement, but counsel for the plaintiff was permitted to examine the defendant at length. He elicited the fact that the defendant had signed an order for the goods upon a partly printed form, all of the written part and the signature of the defendant having been written with a lead pencil. This paper which counsel for plaintiff exhibited to the defendant bore the signature of the defendant written with a lead pencil, the date and some of the immaterial parts of the writing in the body of the order were in lead pencil, but the enumeration of the goods ordered, the prices to be paid therefor and other material parts of the order were written in ink. The defendant admitted the genuineness of his signature but testified that none of the writing which appeared in ink had been there when he signed the order, and that the greater part of the goods had not even been written in the order in lead pencil when he signed it. Without further testimony as to the genuineness of the order, the learned judge of the court below refused to permit the defendant to testify as to what had occurred between him and the agent for the plaintiff at

the time he made the arrangement to receive the goods, for the reason that in the printed form of the order there appeared these words: "No agreement, verbal or otherwise, except as written herein, will abridge or supplement this order."

The defendant called, as for cross-examination, the treasurer of the plaintiff company who testified that his company sold goods of the character involved in the present case only to wholesale dealers or jobbers, that its agents had authority to take orders from plumbers and others in the retail business and submit them to wholesale dealers or jobbers who were customers of the plaintiff to be filled, that it was the custom of such agents to get orders from the plumbing trade and then take them around to a jobber in order to get the jobber to buy quantities of this goods. Counsel for the plaintiff in cross-examination of this witness, its own treasurer, fully brought out the facts with regard to the alleged written order for the goods, which may be thus briefly stated. The written part of the paper when received at the office of the plaintiff in New York had all been written with a lead pencil; a bookkeeper, by direction of the treasurer of the plaintiff company, wrote into the order with pen and ink the designation, character and quantity of the goods and the prices to be paid therefor, and erased the lead pencil writing which had been upon the order at the time the defendant signed it. After the facts had been thus made clear, the plaintiff offered this order in evidence, and the court admitted it over the objection of the defendant. That the designation of the goods and the prices to be paid for them were material parts of this order is beyond question. Strike out those parts of the order and it amounts to nothing. This is not a case of an immaterial change in a written instrument, nor is it a mere addition to what the genuine instrument contained. The list of goods written in the order when the defendant signed it has been absolutely wiped out, and the list which it now contains was not there when he signed it. Whether the

list which he signed and that which the plaintiff subsequently wrote into it are identical is a matter dependent wholly upon oral testimony. It was error to admit this order in evidence.

The order being eliminated from the case the defendant ought to have been permitted to show all that occurred between him and the agent of the plaintiff at the time the contract was made. The testimony of the treasurer of the plaintiff company certainly established that the agent, Burns, had authority to do all that this defendant proposed to prove that he had done. All the specifications of error are sustained.

The judgment is reversed with a procedendo.